IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERIDIAN BANK<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SANDY SPRING BANK; MALCOLM HOLLENSTEINER; ROBERT JOHNSTON; ANTHONY SOS; STEPHEN HANEY, SR.; MICHELLE WASSMUTH; ALEXANDER GUBA III; CRAIG CHARLOW; EVAN KREITZER; MICHAEL SAVANI; KEVIN ALBERTINI; AND JOHN WILLINGHAM<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>Case No. 22 cv 03951 (GEP) |

**PLAINTIFF'S REPLY BRIEF IN OPPOSITION TO SSB DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

As they have done throughout the jurisdictional discovery process, in their Reply, Defendants Sandy Spring Bank ("SSB") and Malcolm Hollensteiner ("Hollensteiner") (collectively "SSB Defendants") continue to misstate facts discovered during jurisdictional discovery, ignore this District's precedent, and, in light of the evidence uncovered, move the goal posts as to what Plaintiff must show to establish the applicability of the closely related doctrine. Following SSB Defendants' Reply, the following facts are not in dispute:

1. SSB Defendants recruited the FME Defendants to join SSB while they were employed by Meridian;

2. During their conversations, the FME Defendants had extensive conversations with SSB Defendants regarding their compensation and other terms and conditions of their employment;

-1-

3. During those conversations, FME Defendants shared confidential and proprietary information regarding Meridian's compensation model and pricing structure with SSB Defendants;

4. During those conversations, FME Defendants, Johnston, Haney, and Sos informed SSB Defendants that they had employment agreements prior to commencing employment with SSB; and

5. SSB Defendants reviewed and reviewed a copy of Johnston's employment agreement prior to hiring any FME Defendants.

These facts, among others, support finding that the closely related doctrine applies to SSB Defendants.

Faced with these facts, SSB Defendants back pedal and, without any support from the case law, erroneously argue, without citing any case law in support, that SSB Defendants. Additionally, while ignoring all of the contacts SSB actually has with Pennsylvania, SSB Defendants ignore this District's precedent and erroneously claim that applying the closely related doctrine would violate SSB Defendants constitutional rights and only cite a District of New Jersey case in support while ignoring this District's consistent application of the closely related doctrine in cases with facts similar to those before the Court. Accordingly, SSB Defendants arguments are unpersuasive and should be disregarded by the Court.

## ARGUMENT

As an initial matter, Plaintiff reiterates the appropriate standard of review with respect to SSB Defendants' Renewed Motion. At this stage, Meridian need only show, by a *preponderance of the evidence*, facts that establish a *prima facie* case in favor of personal jurisdiction. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *Atiyeh v. Hadeed*, No. 04-2621, 2007 U.S. Dist. LEXIS 19534, at *4 (E.D. Pa. Mar. 19, 2007) (emphasis added). Importantly, when reviewing a motion to dismiss under Rule 12(b)(2), this Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Eurofins*

*Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). Thus, even if there is a dispute regarding the facts uncovered during jurisdictional discovery, this Court must construe those facts in Meridian's favor.

SSB Defendants cherry pick one question and answer of Hollensteiner's testimony during SSB's 30(b)(6) deposition and erroneously argue that it supports their position that Johnston provided his employment agreement SSB, not after his employment with SSB began, but while he was "onboarding" with SSB. (Reply at 2-3). SSB Defendants ignore that Hollensteiner testified multiple times throughout SSB's 30(b)(6) deposition that he asked about and reviewed Johnston's employment agreement before his employment with SSB commenced:

> Q. When did [Johnston] show you his employment agreement – show Sandy Spring Bank his employment agreement, excuse me?
>
> A. He provided a hard copy of the employment agreement to me sometime in April or May.
>
> Q. Prior to being employed by Sandy Spring Bank?
>
> A. Correct.
>
> Q. And while he was employed by Meridian?
>
> A. Correct.

**(ECF No. 55, Exh. D**, at 19:6-24; 20:1-20; 38:2-10). Indeed, Hollensteiner admits that SSB did not hire Johnston until *after* SSB reviewed Johnston's employment agreement. **(ECF No. 55, Exh. D**, at 29:19-24; 30:1-11). The only time Hollensteiner testified otherwise was when FME Defendants' counsel was forced to clarify with him twice, the first time of which Hollensteiner again repeated that he reviewed the employment agreement before Johnston's employment with Meridian had ended. **(ECF No. 55, Exh. D** at 37:17-24; 38:1-17). Even though SSB Defendants disingenuously dispute this fact, again, at this stage, this disputed fact should be construed in favor

of Plaintiff. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

Faced with this reality, SSB Defendants then focus their attention on the erroneous argument that SSB Defendants not only should SSB Defendants have had knowledge of the FME Defendants' employment agreement, they also must have had express knowledge of the forum selection provision of the employment agreement. Despite seeking to grossly expand the requirements of the closely related doctrine, SSB Defendants fail to cite any case, in this District, this Circuit, or throughout the nation, that requires a non-signatory to have express knowledge of a certain provision of a contract for it to apply. To be clear, none of the case law that applies the closely related doctrine did so based on a non-signatories knowledge of the forum selection clause within an agreement. To the contrary, courts in a similar context have applied the closely related doctrine when: (1) non-signatories conspire with employees to breach their agreements; and (2) non-signatories have knowledge of the agreement that the signatories allegedly breached. To hold otherwise would not only stringently narrow the application of the closely related doctrine, but it would also allow any company to escape the jurisdictional provision of the very agreement it helped violate by shielding its eyes from a single clause within the agreement. Such a narrow interpretation is unsupported by the case law and would excuse companies who failed to perform their due diligence when hiring individuals with employment agreements. Instead, this Court should follow this District's precedent and ignore SSB Defendants' baseless claims to the contrary.

Similarly, SSB Defendants now also argue, again without citing any case law, that Meridian must show SSB Defendants reviewed each FME Defendants' employment agreement prior to hiring them for the closely related doctrine to apply. They the incorrectly, and ironically, claim that Meridian does not cite any legal support for its claim that knowledge of one FME

Defendant's employment is sufficient for the Court to exercise personal jurisdiction over SSB Defendants. (Reply at 4). SSB Defendants' claim is not only incorrect, but it demonstrates SSB Defendants' misunderstanding of the application of the closely related doctrine. Courts in this District and Circuit have consistently held that "all that is required if facts demonstrating a close relationship to the signatory or to the contractual dispute, such that application of the forum selection clause was reasonably foreseeable." *Synthes*, 887 F. Supp. 2d at 607. Additionally, courts have applied the closely related doctrine even where a non-signatory is not 100% sure an employee has an employment agreement so long as the non-signatory should have reasonably foreseeable that the employees would have such agreements. *Matthews International Corporation v. Lombardi*, Case No. 2:20-cv-00089, 2020 WL 1275692, at *15 (W.D. Pa. Mar. 17, 2020). Indeed, SSB Defendants' claim that they must have had knowledge of each of the FME Defendants' employment agreements is as illogical as it is meritless. Once personal jurisdiction over SSB Defendants is established in one scenario (i.e. knowledge of Johnston's employment agreement), it cannot be destroyed by the addition of other defendants. SSB Defendants' argument is a red herring that should be ignored.[1]

SSB Defendants continue their argument by citing case law outside of the Eastern District of Pennsylvania in an attempt to argument that, somehow, SSB Defendants constitutional rights have been violated. However, by doing so, SSB Defendants ignore the application of the closely related doctrine in this District, where courts have expressly found that non-signatory defendants were subject to personal jurisdiction under the closely related doctrine even in the absence of

---

[1] SSB Defendants' argument is particularly confusing given Hollensteiner's admission that he operated under the belief that each FME Defendant had an employment agreement with Meridian, which shows SSB Defendants' subjective belief that each FME Defendant had an employment agreement that was identical to the one it received from Johnston, yet proceeded to assist each FME Defendant breach regardless. (**ECF No. 55, Exh. B**, 27:3-24; 28:1-8).

contacts with Pennsylvania. *Radian Guaranty, Inc. v. Bolen*, 18 F. Supp. 3d 635, 644-45 (E.D. Pa. 2014) (Brody, J.); *Synthes, Inc. v. Emerge Med., Inc.* 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012) (Buckwalter, J.); *Matthews International Corporation v. Lombardi*, Case No. 2:20-cv-00089, 2020 WL 1275692, at *5-6 (W.D. Pa. Mar. 17, 2020). Meridian respectfully submits that this Court should follow its own District's precedent.

However, even if additional contacts with the forum state is required, which it is not, SSB Defendants also erroneously claim that SSB has no contacts with Pennsylvania while ignoring factual record. Here, like the California bank in *Provident*, Sandy Spring's continuous and systematic contacts with Pennsylvania are just as strong, if not stronger. SSB admits it has the following contacts with Pennsylvania: (1) five employees who reside in Pennsylvania; (2) 1,091 deposit accounts held by Pennsylvania residents totaling $42.6 million out of 10.8 billion held in deposit accounts; (3) twenty-one commercial real estate loans with an aggregate balance of $39.1 million that are secured by projects in Pennsylvania; and (4) eleven consumer loans – consisting of five home equity lines and six mortgage loans – secured by property in Pennsylvania totaling $1.3 million. (*See* **Mantua Decl., ECF No. 18-2, at ¶¶ 6, 8-9**). Just like the non-resident bank in *Provident*, central to the conduct of SSB's business is providing banking services and issuing loans, which SSB expressly admits it performs in Pennsylvania. Moreover, SSB's erroneous argument that these loans represent a minimal amount of its total business is unpersuasive. Notably, SSB does not argue that it only performs "one off" loans in Pennsylvania, but instead admits it conducts business with Pennsylvania and marks those loans as "out of territory" suggesting that it regularly provides loans and deposit accounts to Pennsylvania residents and secured by Pennsylvania properties. (***Id at* ¶7**). As the *Provident* Court held, the percentage and absolute amount of Sandy's Spring's total business amount the loans represent are irrelevant

towards finding general personal jurisdiction. *Provident Nat'l Bank v. California Federal Sav. & Loan Asso.*, 819 F.2d 434,437-38 (3d Cir. 1987).[2]

Even more than the non-resident company in *Provident*, who maintained contacts with Pennsylvania buy purchasing third-party loans secured by property in Pennsylvania, SSB takes it a step further. Rather than purchasing third-party loans secured by property in Pennsylvania, Sandy Spring actively *originated and issued thirty-two loans* that are secured by Pennsylvania properties. **(See Mantua Decl., ECF No. 18-2 at ¶ 8 (emphasis added))**. Moreover, in *Provident*, the non-resident bank did not have any employees who resided in Pennsylvania, whereas SSB admittedly has five employees who reside and perform their job duties within Pennsylvania. **(Id. at ¶9)**. Despite SSB Defendants' representations, they their only relation to Pennsylvania is not the forum selection clause in the FME Defendants' employment agreements.

The remainder of SSB Defendants' Reply is a regurgitation of their previous attempts to distract the Court by citing other scenarios where the closely related doctrine applies but ignoring the actual scenario that establishes a close relation in this case. Those cases, *Magi, Villanueva*, and *Novak*, simply stand for the proposition that the closely related doctrine does apply in various scenarios. However, the close relation here is identical to the closely related scenario in *Radian*, *Synthes*, and *Matthews*. In all three cases, the courts, two of which were in this District, held that a unique close relationship existed because signatory employees were recruited by non-signatory employers to leave their employer and join the non-signatory employer in violation of a provision in their employment agreements. SSB Defendants claim that these cases are different because the provision of the contract that was breached was a non-compete provision is nothing more than a

---

[2] Indeed, the total percentage of SSB's business that is conducted in Pennsylvania is similar to the non-resident company in *Provident*, where the Third Circuit found that general personal jurisdiction existed. *Id.* at 438.

distinction without a difference. The relevant inquiry is whether SSB Defendants assisted the FME Defendants to violate a provision in their employment agreements with Meridian despite having knowledge of the employment agreement. Based on the record evidence, and when any disputes are interpreted in Meridian's favor, that answer is "Yes."

The same factual scenario present in *Radian*, *Synthes*, and *Matthews* is present here. As stated in John Robb's Declaration and Hollensteiner's deposition, *while the FME Defendants were still employed by Meridian*, SSB Defendants: (1) initiated contact with the FME Defendants; (2) texted, called, and met with them in person to entice them to leave Meridian and join SSB; (3) spoke to them extensively about their compensation plan, bonuses, and "override" payments; (4) had detailed discussions with them regarding Meridian's confidential and proprietary payment structure, pricing models, and how each were computed to structure SSB's models to it; (5) encouraged the SSB Defendants to bring others from Meridian to SSB; and (6) used Meridian's confidential and proprietary information to their benefit to entice the FME Defendants to join SSB. (**ECF No. 55, Exh. B**). SSB Defendants did so all the while knowing that the FME Defendants had employment agreements with Meridian and that, by having these conversations and sharing this information, SSB Defendants were assisting the FME Defendants breach the very contract that led to Meridian's claims against all Defendants, i.e. sharing Meridian's confidential information, breaching their duty of loyalty, breaching their non-solicitation provision, etc. Stated differently, the record evidence shows that SSB Defendants worked closely with FME Defendants against the interests of Meridian and those actions were in direct violation of the FME Defendants' employment agreements that SSB Defendants knew about. *See First Fin. Mgmt. Group v. Univ. Painters of Balt., Inc.*, No. 11-5821, 2012 U.S. Dist. LEXIS 49123, at *3 (E.D. Pa. Apr. 5, 2012) ("when signatories and non-signatories [to a contract containing a forum selection clause] act

together against the interests of the plaintiff, the non-signatory co-conspirators may also be bound by the forum selection clause") (brackets in original).  As previously explained, despite their attempts to claim otherwise, *there is no requirement that the non-signatory have express knowledge of the forum selection clause*, courts have held that the closely related doctrine applies even in the absence of both: (1) express knowledge of the forum selection clause; and (2) contacts that would otherwise satisfy the minimum contacts test.

For the foregoing reasons, with the record evidence and any disputes interpreted in Plaintiff's favor, as required, Plaintiff has set forth a *prima facie* case of personal jurisdiction over SSB Defendants by a preponderance of the evidence.  Accordingly, Plaintiff respectfully requests that the Court deny SSB Defendants Renewed Motion to Dismiss.

                Respectfully submitted,

                */s/ Immon Shafiei*
                Daniel P. O'Meara, Esq.
                Immon Shafiei, Esq.
                **OGLETREE, DEAKINS, NASH,**
                **SMOAK & STEWART, P.C.**
                1735 Market Street, Suite 3000
                Philadelphia, PA  19103
                (215) 995-2800
                dan.omeara@ogletree.com
                immon.shafiei@ogletree.com

                *Attorneys for Plaintiff*

Dated:  May 26, 2023

## CERTIFICATE OF SERVICE

I certify that I have served this document via the ECF Notification System to be served upon all parties on the docket.

Date: May 26, 2023

Respectfully submitted,

/s/ Immon Shafiei
Daniel P. O'Meara, Esq.
Immon Shafiei, Esq.
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800
dan.omeara@ogletree.com
immon.shafiei@ogletree.com

*Attorneys for Plaintiff*