## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MERIDIAN BANK,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SANDY SPRING BANK et al.,** | : | **NO.  22-3951** |
| *Defendants* | : | |

### MEMORANDUM

PRATTER, J.                                                NOVEMBER 29th, 2023

This action arises primarily out of what Meridian Bank avers was the improper and unlawful acquisition, misappropriation, and use of Meridian's confidential and proprietary trade secret information, as well as a breach of, and/or tortious interference with, employment agreements Meridian had with several of its former employers. Meridian has sued 12 defendants, who have organized themselves into two categories: (1) the "SSB defendants," which include Sandy Spring Bank and Malcom Hollensteiner, who is an employee of Sandy Spring; and (2) the "FME defendants," namely Robert Johnston, Anthony Sos, Stephen Haney, Sr., Michelle Wasmuth, Alexander Giba III, Craige Charlow, Evan Kreitzer, Michael Savani, Kevin Albertini, and John Willingham. All of the individual defendants in this latter category are former employees of Meridian Bank and, like Mr. Hollensteiner, are now working at Sandy Spring.

The SSB defendants moved to dismiss Meridian's Complaint as to all claims against them for lack of personal jurisdiction and improper venue, and after holding an oral argument on that motion, the Court instructed the parties to engage in limited, jurisdictional discovery, after which the SSB defendants could renew their motion to dismiss. The SSB defendants renewed their

1

motion, and the Court heard additional oral argument. Upon consideration of the new evidence and the parties' renewed briefing, the Court will deny the renewed Motion to Dismiss.

## BACKGROUND

Sandy Spring Bank is a financial institution organized under the laws of Maryland with a principal office in Olney, Maryland. Sandy Spring has 40 branch offices located in Maryland, 13 offices in Virginia, and 3 in Washington, D.C. Sandy Spring has no branches or offices in Pennsylvania and does not advertise or solicit for business in Pennsylvania. Sandy Spring is not registered to do business in Pennsylvania and does not own or lease real estate in Pennsylvania.

Meridian Bank is a Pennsylvania-chartered banking corporation with its headquarters located at 9 Old Lincoln Highway, Malvern, PA 19355. As of the Spring of 2022, all of the FME defendants were employed by Meridian as either Residential Branch Managers or Residential Mortgage Loan Originators, and all of them had executed employment agreements as a condition of their employment with Meridian. These employment agreements all included a forum selection clause providing either that "[a]ny litigation relating to this agreement shall be brought in the federal or state courts in or for Montgomery County, Pennsylvania" or "[n]othing … shall prohibit Meridian from filing at State or Federal Court in relation to this Agreement[;] … venue for any such Court proceeding shall be in that Federal or State Court nearest to Meridian's then headquarters and [employee] consents to personal jurisdiction at such forum." Ex. A to Pl.'s Resp. to Mot. to Dismiss ¶ 5–9 (emphasis removed).

In the Spring of 2022 three of the FME defendants—Messrs. Johnston, Haney, and Sos— began negotiating for new employment with Sandy Spring. They and Sandy Spring Senior Vice President Malcom Hollensteiner purportedly "developed a plan" in which those three FME defendants would "subvert their contractual and statutory obligations" by temporarily remaining employed by Meridian while attempting to convince other Meridian employees to leave Meridian

for employment at Sandy Spring and bring with them proprietary Meridian information. After his initial conversations with Messrs. Johnston, Haney, and Sos, Mr. Hollensteiner began reaching out to other Meridian employees via text message, phone calls, and in-person meetings. These in-person meetings involved all of the FME defendants and others who ultimately decided not to leave Meridian.

In or around April 2022, Mr. Hollensteiner met with FME defendants Messrs. Johnston, Haney, and Sos and two other individuals who were (and still are) employed by Meridian, Mr. Robb and Mr. Sawheny, at a restaurant in Maryland called Eggspectation ("Eggspectation Meeting"). Messrs. Johnston, Haney, and Sos were still employed by Meridian at that time. During the Eggspectation Meeting, they all discussed prospective employment with Sandy Spring, including matters such as Sandy Spring's compensation structure and how Sandy Spring's pricing models compared to Meridian's confidential pricing model. They also discussed whether there were any other Meridian employees who would be interested in leaving Meridian to join Sandy Spring. At some point during the Eggspectation Meeting, Mr. Robb expressed concern about whether there would be any problems with so many Meridian employees leaving for Sandy Spring, to which Mr. Hollensteiner responded by stating, "yes, no problem," and telling those present not to worry because Sandy Spring would have them covered.

On April 25, 2022, after the Eggspectation Meeting, Mr. Hollensteiner met again with Messrs. Johnston, Haney, Sos, and Robb at another Maryland restaurant called Stanford Grill ("Stanford Grill Meeting") to continue their previous discussion about each individual's prospective employment with Sandy Spring. At the time of this meeting, Messrs. Johnston, Haney, Sos, and Robb were all still employed by Meridian. They again talked about Sandy Spring's pricing models compared to Meridian's confidential and proprietary pricing models, purportedly

in an effort by Mr. Hollensteiner (on behalf of Sandy Spring) to entice Messrs. Johnston, Haney, Sos, and Robb to join Sandy Spring by tailoring Sandy Spring's models to match Meridian's. Crucially, during the Stanford Grill Meeting, Mr. Hollensteiner asked Messrs. Johnston, Haney, Sos, and Robb whether they had employment agreements with Meridian and whether those agreements were "standard." *See* Hollensteiner Dep. Tr. at 16:20–24; 17:1–8; 24:22–24; 25:1–4. Messrs. Johnston, Haney, Sos, and Robb informed Mr. Hollensteiner that they did have employment agreements with Meridian. On April 26, the day after the Stanford Grill Meeting, the Mortgage Production Assistant for Meridian, Diana Corbin, discovered a writing on Mr. Johnston's desk in his Meridian office reflecting his discussions with "Malcolm" about the various proposed terms and conditions of his prospective employment with Sandy Spring. Doc. No. 55, 7–8 (citing Diana Corbin Decl. ¶4).

At some point after learning that Mr. Johnston had an employment agreement with Meridian (but before Mr. Johnston left Meridian), Mr. Hollensteiner spoke with Mr. Johnston about the terms of that agreement and whether Mr. Johnston could join Sandy Spring without violating that agreement. Mr. Johnston provided Mr. Hollensteiner with a physical copy of his employment agreement with Meridian—which included a forum selection clause—and Mr. Hollensteiner reviewed it and then passed it on to Lynne Pulford, the Mortgage Division President for Sandy Spring. After Ms. Pulford reviewed the agreement, she sent it to Sandy Spring's legal team. Thereafter, Sandy Spring hired Mr. Johnston.

On July 7, 2022, Meridian sent a letter to Sandy Spring's General Counsel and Chief Administrative Officer, Aaron Kaslow, about Mr. Johnston's Meridian's employment agreement. *See* Doc. No. 55, at 10. On July 14, 2022, Mr. Kaslow responded via letter, which made specific reference to the employment agreement Mr. Johnston previously had with Meridian and stated that

Sandy Spring had "counseled" Mr. Johnston about the obligations he owed under his former employment agreement, including that he cannot solicit customers he had closed for Meridian in the 12 months prior to his departure. *Id.*

Sandy Spring proceeded to hire Mr. Haney and Mr. Sos and seven other Meridian employees, all of whom were subject to employment agreements containing the same jurisdictional waiver language that was included in Mr. Johnston's employment agreement. Although Mr. Hollensteiner does not recall asking these seven individuals whether they had employment agreements like Mr. Johnston's, he "assumed" at the time they had such agreements because in his experience "if one employee of a mortgage division of a bank has an agreement, [then] all other commission or sales employees will also have agreements." Hollensteiner Dep. Tr. at 27:3–24; 28:1–8.

On October 4, 2022, Meridian filed a complaint, which was subsequently amended on October 18, asserting several claims against the SSB defendants arising from the events recounted above. Doc. Nos. 1, 4. On January 9, 2023, the SSB defendants filed a Motion to Dismiss Meridian's Amended Complaint for lack of personal jurisdiction and improper venue. Doc. No. 18. Following the filing of various responses, replies, and surreplies, the Court scheduled oral argument on SSB's Motion to Dismiss. Doc. No. 30. Shortly after that hearing, the Court denied the SSB defendants' Motion to Dismiss with prejudice and ordered the parties to engage in limited, jurisdictional discovery. Doc. No. 34. Following the conclusion of this jurisdictional discovery, with the Court's permission, the SSB defendants filed this Renewed Motion to Dismiss. Doc. No. 50.

The SSB defendants argue that this Court lacks personal jurisdiction over them because they do not have the requisite minimum contacts with Pennsylvania to subject them to its

jurisdiction. They also argue that, for the same reasons, venue is improper. Meridian counters by arguing primarily that the SSB defendants should be bound by the forum selection clauses in the FME defendants' employment agreements with Meridian under the "closely related party" doctrine, even though the SSB defendants did not sign those agreements. According to Meridian, the closely related party doctrine applies here because the SSB defendants conspired with the FME defendants against Meridian's interests in violation of the terms of the agreements such that invocation of the forum selection clause against all conspirators was reasonably foreseeable.

DISCUSSION

### A. Fed. R. Civ. P. 12(b)(2) – Lack of Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may seek dismissal of a claim for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "[T]he burden of demonstrating the facts that establish personal jurisdiction" is on the plaintiff, *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), and "once a defendant has raised a jurisdictional defense," the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)); *see also Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). The plaintiff bears the burden to demonstrate personal jurisdiction by a preponderance of the evidence. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 (3d Cir. 1991).

Though the plaintiff bears the burden of establishing personal jurisdiction, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Atiyeh v. Hadeed*, 2007 WL 853816, at *4 (E.D. Pa. 2007) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). Where the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction[,]" *Eurofins*

*Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010), and "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us*, 318 F.3d at 457.

Because the Pennsylvania Long-Arm Statute extends jurisdiction over out-of-state defendants as far as constitutional due process permits, the Court need only consider if the exercise of jurisdiction over SSB defendants comports with the Due Process Clause. *See* 42 Pa. Cons. Stat. Ann. § 5322(b); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998); *Travers v. FedEx Corp.*, 584 F. Supp. 3d 1, 4 (E.D. Pa. 2022). Jurisdiction is consistent with the Due Process Clause if the defendant consents to jurisdiction, or has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Sufficient minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of personal jurisdiction: general and specific. *See generally Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014).

i.    *The Court Lacks General Jurisdiction Over the SSB Defendants*

For a defendant to be subject to the "general jurisdiction" of this Court, the defendant must be "essentially at home" in Pennsylvania. *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022). For Mr. Hollensteiner, who is a natural person, general jurisdiction traditionally attaches only in the state where he is domiciled, which appears to be Maryland. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the

paradigm forum for the exercise of general jurisdiction is the individual's domicile."); Doc. No. 50, at 3 (describing Mr. Hollensteiner as being a "Maryland resident who neither owns nor resides in a Pennsylvania property."). Traditionally, for corporations like Sandy Spring, general jurisdiction attaches only in the states where a corporation is incorporated and "where its central decision-making apparatus is located." *Replica Auto Body Panels & Auto Sales Inc. v. in Tech Trailers Inc.*, 454 F. Supp. 3d 458, 462 (M.D. Pa. 2020). Sandy Spring is organized under the laws of Maryland and has its principal place of business in Olney, Maryland.

This Court may only exercise general jurisdiction over the SSB defendants if they have contacts with Pennsylvania that "are so 'continuous and systematic' as to render [Mr. Hollensteiner and Sandy Spring] essentially 'at home' in [Pennsylvania]." *Daimler*, 571 U.S. at 139; *Aldossari*, 49 F.4th at 257–58. Such a case "would be truly 'exceptional.'" *See Pattanayak v. Mastercard, Inc.*, No. 21-cv-12640, 2021 WL 960856, at *4 (D.N.J. Mar. 12, 2021). Meridian Bank has not established these necessary continuous and systematic contacts with Pennsylvania for either Mr. Hollensteiner or Sandy Spring.

Sandy Spring's contacts with Pennsylvania are minimal, and essentially incidental to its business operations occurring in the mid-Atlantic states of Maryland, Virginia, and District of Columbia. Sandy Spring has no branches or offices located in Pennsylvania, and does not advertise or solicit business in the Commonwealth either. Sandy Spring is not registered to do business or own or lease any real estate in Pennsylvania. Although Maryland, Virginia, and the District of Columbia are Sandy Spring's primary lending market, as of December 31, 2022, Sandy Spring had 1,091 "out of territory" deposit accounts held by persons residing in Pennsylvania (constituting 0.6% of the bank's total accounts) and in 2022, Sandy Spring paid approximately $100,000 to the Commonwealth in taxes. As of November 30, 2022, Sandy Spring had 32 loans secured by

property in Pennsylvania, which is less than 0.3% of the bank's total loan portfolio. Out of a total of approximately 1,175 employees, there are only three remote employees and two hybrid employees who live in Pennsylvania.

Mr. Hollensteiner's contacts with Pennsylvania are also very minimal: he has neither financial nor personal ties to the Commonwealth, and apparently only visits Pennsylvania "a handful of times per year for … sporting events." *Id.* If the Court were to determine that the SSB defendants are "at home" in Pennsylvania based on such limited contacts, it is likely that courts in multiple other states could also exercise general jurisdiction over Sandy Spring and Mr. Hollensteiner. *See Daimler AG*, 571 U.S. at 761 (stating that an approach that "approve[s] the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping.") (internal citation and quotation marks omitted). The Court does not have general personal jurisdiction over the moving defendants.

    *ii.    The Court has Specific Personal Jurisdiction Over the SSB Defendants*

Specific jurisdiction exists where the defendant consents to personal jurisdiction, *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982), or has taken "some act by which [the defendant] purposefully avails itself of the privilege of conducting activities within the forum State" and the plaintiff's claims "arise out of or relate" to the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eight Judicial District Court*, 141 S. Ct. 1017, 1024–25 (2021) (internal citations omitted). This inquiry is designed to ensure that defendants have "'fair warning'—knowledge that 'a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign.'" *Id.* at 1025 (quoting *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 472 (1985)). A defendant can also "consent" to personal jurisdiction through a

contractual forum selection clause. *De Lage Landen Fin. Servs., Inc. v. Mid-America Healthcare LP,* No. 08-CV-1264, 2008 WL 3889996, at *3 (E.D. Pa. 2008).

Here, neither Sandy Spring nor Mr. Hollensteiner is a signatory party to a relevant contract containing a clause selecting Pennsylvania as the forum. However, the FME defendants were subject to employment agreements with Meridian that contained such a clause, and "[i]t is widely accepted that non-signatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Balt., Inc.*, 11-cv-5821, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012) (quoting *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2011 WL 2973543, at *2 (D.N.J. July 21, 2011)).

The Third Circuit Court of Appeals has designated four "substantive issues that bear on whether" a forum selection clause applies to a non-signatory third party. *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018). Of those four, only the following three are relevant here:

(1) whether the parties are "intended third party beneficiaries" or "closely related parties" to the agreement;

(2) whether "such enforcement was foreseeable to the non-signatory"; and

(3) whether "the dispute itself [falls] within the scope of the forum selection clause."

*Id.* Courts considering the question of whether a non-signatory may be bound by a forum selection clause are to "take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010).

Because Meridian cannot show that either Sandy Spring Bank or Mr. Hollensteiner were "intended third party beneficiaries" of Meridian's employment agreements with the FME defendants, the Court will focus on whether the SSB defendants are "closely related parties" to the employment agreements. The "closely related" parties doctrine is a form of equitable estoppel, *In re McGraw-Hill*, 909 F.3d at 62-63, and "[i]n determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015). Here, the FME defendants and the SSB defendants are not in an "ownership or subsidiary relationship," although the FME defendants are now employed by Sandy Spring. There is also no evidence that the SSB defendants were involved in the contract negotiations between the FME defendants and Meridian Bank, nor is there evidence that the SSB defendants receive a "direct benefit" from the employment agreements between Meridian and its former employees.

Meridian asserts, however, that the SSB defendants are nonetheless "closely related" to the employment contracts because of their co-conspirator[1] relationship with the FME defendants. In support of this argument, Meridian points to *Synthes Inc. v. Emerge Medical, Inc.*, 887 F. Supp. 2d 598 (E.D. Pa. 2012) and *First Financial Mgmt. Grp., Inc. v. University Painters of Baltimore, Inc.*, No. 11-5821, 2012 WL 1150131 (E.D. Pa. Apr. 5, 2012), which stand for the proposition that "when signatories and non-signatories to a [contract containing a forum selection clause] act

---

[1]    "Co-conspirator" is used here simply to refer to the fact that the FME defendants and SSB defendants allegedly worked together against the interests of Meridian—Meridian is not attempting to use a "co-conspirator" theory to impute personal jurisdiction to the SSB defendants, which would require Meridian to show that "substantial acts in furtherance of the conspiracy occurred in the forum state, of which the out-of-state co-conspirator was or should have been aware." *Synthes*, 887 F. Supp. 2d at 615 (quotations omitted).

together against the interests of the [signatory] plaintiff [to violate the contract], the non-signatory co-conspirators may also be bound by the forum selection clause." *University Painters,* 2012 WL 1150131, at *3. In other words, the SSB defendants are "closely related" to the employment agreement in that they—and their actions in concert with Meridian's former employees—are inextricably intertwined with the contract dispute underlying this case. *See Synthes,* 887 F. Supp. 2d at 613.[2] Moreover, as noted above, the SSB defendants and the signatory FME defendants share an employer-employee relationship. Meridian has met its burden of showing that the SSB defendants are closely related to the employment agreements containing the forum selection clause.

Meridian has also satisfied its burden of showing that enforcement of the forum selection clause in the employment agreements was reasonably foreseeable to the SSB defendants. *See University Painters,* 2012 WL 1150131, at *3 ("Third parties that 'should have foreseen

---

[2]       Other federal courts have also adopted this principle. *See e.g., Radian Guaranty, Inc. v. Bolen,* 18 F. Supp. 3d 635, 646–48 (E.D. Pa. 2014) (holding non-signatories to be bound by forum selection clause because they recruited employee while employee was still employed by the plaintiff, despite knowing she was subject to a non-competition agreement); *Mathews Int' Corp. v. Lombardi,* Case No. 2:20-cv-00089, 2020 WL 1275692, at *5–6 (W.D. Pa. Mar. 17, 2020) (binding non-signatories to forum selection clause though non-signatories were not entirely certain that signatories had a non-competition agreement with plaintiff because it was foreseeable that such an agreement would be in force); *Magi XXI, Inc. v. Stato Della Citta Del Vaticano,* 818 F. Supp. 2d 597, 608 (E.D.N.Y. 2011) (binding non-signatory Vatican State to forum selection clause because plaintiff averred that the signatory defendants and the Vatican State acted together to defraud plaintiff, and plaintiffs' claims against the Vatican State were "essentially identical to those it asserted against [the signatories]"); *Villanueva v. Barcroft,* 822 F. Supp. 2d 726, 739 (N.D. Ohio 2011) (binding non-signatory to forum selection clause where all of plaintiff's claims against the defendant arose out of that contract and all defendants—both signatory and non-signatory—"acted in concert" to defraud the plaintiff); *St. Jude Med., S.C. Inc. v. Biosense Webster, Inc.,* No. 12-621 ADM/AJB, 2012 WL 1576141, *5–6 (D. Minn. May 4, 2012) (binding non-signatory to forum selection clause where non-signatory's hiring of plaintiff's former, signatory employee led to plaintiff's claims against that former employee and the non-signatory defendant); *Novak v. Tucows, Inc.,* No. 06-cv-1909, 2007 WL 922306, *13 (E.D.N.Y. Mar. 26, 2017) (binding non-signatory defendant to forum selection clause because plaintiff's claims against non-signatory were "nearly identical" to those against a signatory defendant, and all of the claims arose out of the same transaction, so it "was certainly foreseeable that any claims [plaintiff] might raise against [the non-signatory] in relation to the transfer could be subject to the terms contained in his agreement with [signatory].").

governance by the clause' may also be bound by it.") (quoting *Donachy*, 2011 WL 2973543, at *2). Meridian Bank argues that: (1) the SSB defendants recruited Meridian's former employees while they were still employed by Meridian; (2) the SSB defendants knew (or reasonably assumed) of the Meridian employees' employment agreements prior to hiring them, and chose to hire them despite that knowledge; and (3) knew or should have known about the forum selection clause in those agreements because fairly early in the hiring process the SSB defendants reviewed a hard copy of one of those agreements. According to Meridian, this constitutes the requisite evidentiary basis establishing that the SSB defendants "had an awareness of the [forum selection] clause, its contents, and that it might be defensively invoked." *In re McGraw-Hill*, 909 F.3d at 65.

The SSB defendants counter by asserting that, regardless of foreseeability, exercising personal jurisdiction over them is inappropriate because Meridian cannot show that the SSB defendants have sufficient minimum contacts with Pennsylvania or that Meridian's claims arise out of those contacts because this dispute concerns events that took place in Maryland and none of the former employees resided in Pennsylvania at the time. Thus, Sandy Spring and Mr. Hollensteiner argue, it would be unfair and unjust for this Court to exercise jurisdiction over them using the above-described "closely related" doctrine.

But, as noted above, the due process aspect of the personal jurisdiction inquiry is meant to ensure that defendants have "fair warning" that certain actions may subject them to jurisdiction in a foreign state, *see Burger King*, 471 U.S. at 472,[3] and the record shows that SSB defendants had

---

[3]      "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign … the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 472 (quotation omitted).

sufficient warning that they could be embroiled in a dispute governed by the forum selection clause in the employment agreements with which they were interfering.

Meridian again points to several, factually analogous cases to help guide the Court's analysis on this point. First, in *First Financial Management Group, Inc. v. University Painters of Baltimore, Inc.*, No. 11-cv-5811, 2012 WL 1150131 (E.D. Pa. Apr. 5, 2012), the plaintiff—a house painting company—entered into a licensing agreement with Mr. Herzog that allowed him to operate a business under the "University Painters" name, but prohibited Mr. Herzog from participating in a business, venture, or commercial activity involving painting for three years after the expiration of the agreement. *University Painters*, 2012 WL 1150131, at *1. Just prior to the termination of the licensing agreement, Mr. Herzog and his family began operating a company called "Perfect Painters" in the geographic location where he previously painted under the University Painters agreement. University Painters sued the Herzogs in Pennsylvania, even though all the parties were residents of Maryland. *Id.* University Painters argued that all the Herzogs— including those who were not signatories to the original licensing agreement—were bound by that agreement's forum selection clause because all the defendants "worked together … against [University Painter's] interests, so they should have foreseen that the forum selection clause would be enforced against them." *Id.*

Meridian also points to *ELA Medical, Inc. v. Arrhythmia Management Associates, Inc.*, No. 06-cv-3580, 2007 WL 892517 (D. Min. Mar 21, 2007), which involved a fact-pattern very similar to the one here. There, ELA Medical hired Deborah Whitney as a sales associate through her professional corporation Arrythmia Management Associates (AMA) and entered into an Independent Sales Representative Agreement with Ms. Whitney that contained both a non-compete and a forum selection clause, specifying Minnesota as the forum. *Id.* at *1. After Ms.

Whitney terminated this contract and entered into a new contract with Biotronik, ELA Medical filed a suit in Minnesota against Ms. Whitney, Biotronik, and AMA, alleging that non-signatory Biotronik was bound by the forum selection clause in Ms. Whitney's agreement with ELA Medical and therefore subject to personal jurisdiction in Minnesota. *Id.* at *2. In reaching its decision that Biotronik was subject to jursdiction, the district court reasoned that "Biotronik, the non-party to the Contract, is not just the new employer of the individual who agreed to venue in Minnesota and the exercise of personal jurisdiction over her by the Minnesota courts in the Contract with her former employer. It appears that Biotronik actively sought the employ of Whitney knowing that she was then employed by ELA under the Contract containing the clause at issue." *Id.* at *6.

Finally, Meridian relies on *Radian Guaranty Inc. v. Bolen*, 18 F. Supp. 3d 635, 645–47 (E.D. Pa. 2014), which also has a similar fact pattern. In that case, the employer–defendant had been aware of the employee's non-competition agreement during the employee's recruitment, reviewed a copy of the agreement, and recognized the risk of hiring a new employee with a non-competition agreement after consulting with an attorney on the matter. *Id.* at 647. That was enough, in the court's view, to establish the foreseeability of the non-signatory employer being bound by the forum selection clause. *Id.*

The cited cases stand for the proposition that Mr. Hollensteiner and Sandy Spring should have foreseen being subject to the forum selection clauses in the employment agreements, at least by the time they addressed the first one. Just like the non-signatory defendant in *ELA Medical*, the SSB defendants are not only the new employer of the FME defendants, who agreed to venue in Pennsylvania and the exercise of personal jurisdiction over them by the Pennsylvania courts, but there is also sufficient evidence that Mr. Hollensteiner and Sandy Spring "actively sought the employ of [the FME defendants] knowing that [they were] then employed by [Meridian] under the

[agreement] containing the clause at issue." *See ELA Medical*, 2007 WL 892517 at *6. After all, Sandy Spring and Mr. Hollensteiner proceeded to hire the FME defendants after reviewing a hard copy of one of the agreements containing the very clause they are now trying to escape.

Again, the record now contains sufficient evidence that the SSB defendants hired the FME defendants with knowledge of all their employment agreements with Meridian and, certainly, with a hard copy of Mr. Johnston's employment agreement. Sandy Spring should have foreseen being bound by the forum selection clauses in each of the agreements, and indeed, likely actually *did* foresee being bound because Sandy Spring's legal department actually reviewed Mr. Johnston's agreement and acknowledged "counseling" Mr. Johnston on the contents of that agreement, presumably including the risks of a dispute. *See Matthews Int'l Corp v. Lombardi*, 20-cv-89, 2020 WL 1275692 at *6 (W.D. Pa. Mar. 17, 2020); *Astro-Med v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 9–10 (1st Cir. 2009) (extending personal jurisdiction over defendant because it hired the employee despite prior awareness of, and legal advice regarding, employment agreement).

Finally, before binding the SSB defendants to the forum selection clause for the purposes of establishing personal jurisdiction, the Court must look to the language of the clause at issue to determine its scope and whether the claims asserted against those defendants fall within the clause's scope. *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468. 470 (D.N.J. 2007). Here the forum selection clauses provide that "[a]ny litigation relating to this agreement shall be brought in the federal or state courts in or for Montgomery County, Pennsylvania" or "[n]othing … shall prohibit Meridian from filing at State or Federal Court in relation to this Agreement … venue for any such Court proceeding shall be in that Federal or State Court nearest to Meridian's then headquarters and [employee] consents to personal jurisdiction at such forums." Ex. A to Pl.'s Resp. to Mot. to Dismiss ¶ 5–9. Many courts have found that clauses using the phrase "relating

to" indicate that the scope of the clause is subject to a broader interpretation than those using the phrase "arising under." *Lasoff v. Amazon.com, Inc.*, No. 15-cv-2886, 2016 WL 355076, at *3 (D.N.J. Jan. 28, 2016). Meridian asserts the following claims against the SSB defendants: (1) Fraudulent Concealment (Count III); Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act (Count V); Trade Secret Misappropriation under the Maryland Uniform Trade Secrets Act (Count VII); Inducement of Breach of the Duty of Loyalty (Count VIII); Tortious Interference with Contractual Relationships (Count IX); Tortious Interference with Economic Relations and/or Business Relationships (Count X); Conspiracy (Count XI); and Injunctive Relief (Count XII). Doc. No. 4, at 14–34. These claims relate to the employment agreements because the crux of Meridian's complaint against Mr. Hollensteiner and Sandy Spring Bank is that they recruited the FME defendants to leave Meridian bank to work at Sandy Spring and bring with them—in direct violation of those former employees' employment agreements—confidential and proprietary information. *See* Doc. No. 55, at 16–18. Consequently, the claims against the SSB defendants relate to the employment agreements containing the forum selection clauses.

In sum, given the number of employees at issue here, the evidence of meetings between Mr. Hollensteiner and the FME defendants while they were still employed at Meridian, and the exchange and discussion of at least one "standard" employment agreement with Mr. Hollensteiner and Sandy Spring prior to any hires being made, common sense dictates that it would be fair and reasonable—and thus consistent with due process—to bind the SSB defendants to the forum selection clause. *See Synthes*, 887 F. Supp. at 607. ("[C]ourts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is

fair and reasonable to bind a non-party to the forum selection clause.") (quotation omitted). Consequently, the Court finds that it has jurisdiction over the SSB defendants.

## B. Fed. R. Civ. P. 12(b)(3) – Improper Venue

The SSB defendants also argue that venue in this Court is improper and therefore the Court should dismiss the case under Federal Rule of Civil Procedure 12(b)(3). The SSB defendants assert that venue is improper under 28 U.S.C. § 1391 because neither Sandy Spring nor Mr. Hollensteiner reside in Pennsylvania, none of the events or omissions giving rise to the allegations occurred within this judicial district, and neither Sandy Spring nor Mr. Hollensteiner could be found in this judicial district. According to the SSB defendants, Meridian points to no events that happened in this district that gave rise to the claims asserted in the complaint, particularly as to Sandy Spring and Mr. Hollensteiner.

Meridian counters by noting that it is undisputed that each of the FME defendants executed an enforceable employment agreement with Meridian that includes a forum selection clause indicating the federal Eastern District of Pennsylvania as the proper forum. Meridian argues that, even though Sandy Spring and Mr. Hollensteiner are non-signatories to the employment agreements executed by the former Meridian employee defendants, they are subject to the forum selection clause in those agreements for venue purposes for the same reasons they are subject to this Court's jurisdiction. For the reasons described above, the SSB defendants are likewise bound to the forum selection clause for venue purposes and venue in the Eastern District of Pennsylvania is therefore proper.[4]

---

[4]    The SSB defendants are not seeking to transfer the action under 28 U.S.C. § 1404 but are instead asking that this Court dismiss them from the suit because venue is not proper as to them. *See* Doc. No. 50, at 17–19. Consequently, the Court is not required to engage in the "private and public interest analysis" set by 28 U.S.C. § 1404.

CONCLUSION

For the reasons set out in this Memorandum, the Court denies the Motion to Dismiss (Doc. No. 50). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE